UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WINIFRED COOPER,

                Plaintiff,              1:14-CV-0717
                                                      (GTS/CFH)

v.

NEW YORK STATE DEP'T OF LABOR,

                Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

SUSSMAN & WATKINS                         CHRISTOPHER D. WATKINS, ESQ.
  Counsel for Plaintiff                              MICHAEL H. SUSSMAN, ESQ.
1 Railroad Ave.
P.O. Box 1005
Goshen, New York 10924

HON. ERIC T. SCHNEIDERMAN            JUSTIN L. ENGEL, ESQ.
Attorney General of the State of New York    Assistant Attorney General
  Counsel for Defendant
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

## **<u>DECISION and ORDER</u>**

       Currently before the Court, in this employment civil rights action filed by Winifred Cooper ("Plaintiff") against the New York State Department of Labor ("Defendant"), is Defendant's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 19.) For the reasons set forth below, Defendant's motion is granted.

**I.      RELEVANT BACKGROUND**

A.  **Plaintiff's Complaint**

Generally, liberally construed, Plaintiff's Amended Complaint alleges as follows. (Dkt. No. 14.) Plaintiff, who is African-American, commenced employment with New York State in 1978. (*Id.*, ¶ 11.) In October 2007, she was recruited by Defendant to serve as the Director of Equal Opportunity Development ("DEOD"). (*Id.*, ¶ 14.) In this position, Plaintiff represented New York State on the National Association of State Workforce Agencies' ("NASWA") Equal Opportunity Committee. (*Id.*, ¶ 16.) Defendant receives most of its funding from the federal government, and part of Plaintiff's mandate as Director of DEOD was "to ensure that the agency complied with federal Equal Opportunity rules and regulations." (*Id.*, ¶ 15.)

During her entire tenure as an employee with New York State, Plaintiff received positive performance evaluations and was never the subject of disciplinary action. (*Id.*, ¶ 12.) She was widely recognized as one of the state's most highly respected and knowledgeable advocates for equal opportunity within the workplace. (*Id.*, ¶ 13.) In early 2012, based on her performance as Director of DEOD, Plaintiff received a performance-based Merit Award. (*Id.*, ¶ 17.)

In December 2012, Plaintiff learned that the Governor's Office of Employee Relations ("GOER") was planning to substantially alter the means by which internal equal employment opportunity ("EEO") complaints were to be handled by state agencies, including the NYSDOL. (*Id.*, ¶ 18.) Plaintiff reviewed the proposed changes and determined that, in part, they materially conflicted with federal regulations. (*Id.*, ¶ 19.) Plaintiff's overriding and express concern was that GOER's proposed changes would subject the EEO complaint response process to political pressure and thereby enable discrimination not to be redressed based on political calculations. (*Id.*) Plaintiff organized a meeting on December 14, 2012, where she shared her concerns with

the NYSDOL's Executive Deputy Commissioner, Mario Musolino, and the DOL's Director of Employee Relations, DOL counsel, and the DEOD's secretary. (*Id.*, ¶ 20.) Plaintiff volunteered to be on the GOER committee responsible for reviewing the procedures; however, she was not selected for the committee, apparently because she had raised concerns about GOER's compliance with federal regulations. (*Id.*, ¶ 21.)

In late February 2013, GOER's new EEO procedures became effective. (*Id.*, ¶ 22.) Once again, Plaintiff contacted her supervisor, Mr. Musolino, and requested another meeting be held regarding GOER's procedures and their continued conflict with federal law. (*Id.*, ¶ 23.) Another meeting was held on March 15, 2013, during which Plaintiff made a presentation outlining the conflicts between GOER's new procedures and the federal EEO regulations. (*Id.*, ¶ 25.) In response, Mr. Musolino directed agency counsel to address Plaintiff's concerns with "bridging language" that would be submitted to GOER for approval. (*Id.*, ¶ 26.) Mr. Musolino also advised Plaintiff that NYSDOL's former senior counsel, Ann Hohenstein, who had been appointed as Director for this new initiative by GOER, had referred to Plaintiff as a "pain in her butt" for raising concerns about the new procedures. (*Id.*, ¶ 27.)

On March 19, 2013, NYSDOL counsel sent Plaintiff a draft of the proposed revised complaint handling procedures, which addressed her concerns, prior to sending the draft to Mr. Musolino and the Governor's Deputy for Civil Rights, Alphonso David. (*Id.*, ¶ 28.) Plaintiff agreed with the changes and signed off on the revised language. (*Id.*, ¶ 29.)

On April 10, 2013, Mr. Musolino advised Plaintiff that her services were no longer needed by the NYSDOL and that her employment was ending that day. (*Id.*, ¶ 30.) Mr. Musolino further directed Plaintiff to file her retirement papers the next day. (*Id.*) When

Plaintiff advised Ms. Musolino that she had no plans to retire, and requested an explanation for her termination after 35 years of exemplary service, Mr. Musolino advised that the DEOD would be going in a different direction and it wanted new leadership. (*Id.*, ¶ 31.)

Neither Mr. Musolino, nor anyone else at NYSDOL, had advised Plaintiff that there was any perceived deficiency with her performance or leadership, or that there was any desire to move DEOD in a "new direction." (*Id.*, ¶ 32.) Rather, Plaintiff believes that her termination was the result of pressure from GOER to the NYSDOL to terminate her in retaliation for Plaintiff's opposition to GOER's proposed EEO complaint-handling procedures. (*Id.*, ¶ 32A.)

Based upon the foregoing, Plaintiff alleges she was fired in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296. (*Id.*, ¶¶ 33-36.)

B.   **Parties' Briefing on Defendant's Motion to Dismiss**

   1.   **Defendant's Memorandum of Law-in-Chief**

Generally, Defendant makes three arguments in support of its motion to dismiss Plaintiff's Amended Complaint. (Dkt. No. 19, Attach. 1 [Def.'s Mem. of Law].) First, Defendant argues that Plaintiff has failed to allege facts plausibly suggesting that she engaged in protected activity under either the participation or opposition clause of Title VII. (*Id.* at 6-10.) Specifically, with respect to the participation clause, Defendant argues that Plaintiff did not participate in an investigation, proceeding, or hearing under Title VII. (*Id.* at 6-7.) Rather, Defendant argues that she alleges only that she "expressed concerns" about proposed changes to the manner in which NYSDOL handled EEO complaints and that those concerns were addressed when NYSDOL drafted new language to include in the procedures. (*Id.* at 7.) With regard to the

opposition clause, Defendant argues that Plaintiff has not alleged facts plausibly suggesting that she engaged in a protected activity. (*Id.* at 7-10.) According to Defendant, a management employee does not engage in protected activity under Title VII when he/she disagrees with, or opposes, the actions of her employer in the course of her normal job performance. (*Id.* at 7.) Moreover, Defendant argues that employees whose job involves handling discrimination complaints "need to first clearly establish that they were engaged in protected activities other than the general work involved in their employment" before they can claim retaliation. (*Id.* at 8.) As a result, Defendant argues that Plaintiff was merely performing her job responsibilities when she expressed her concerns and was not taking any action to oppose illegal discrimination by her employer. (*Id.* at 9-10.)

Second, Defendant argues that the Supreme Court's decision in *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009), is distinguishable from the present case. (*Id.* at 10-13.) Specifically, Defendant argues that in *Crawford* the Court held that Title VII's anti-retaliation protection "extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation." *Crawford*, 555 U.S. at 273. Defendant argues that this case is distinguishable because Plaintiff does not contend that she reported unlawful discrimination in response to an inquiry from her employer, nor has she even identified any unlawful discrimination by her employer at all. (*Id.* at 11.) Rather, Plaintiff merely claims that she opposed *procedural changes* to complaint-handling that she believed conflicted with unspecified federal regulations that could potentially cause future discrimination complaints not to be redressed. (*Id.*) Finally, Defendant argues that *Crawford* did not overrule well-established case precedent that prohibits employees from claiming that

they were engaged in a protected activity when they were merely performing their job duties. (*Id.* at 12.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in response to Defendant's motion to dismiss, Plaintiff concedes that she has not alleged facts plausibly suggesting a violation of the participation clause of Title VII. (Dkt. No. 20, at 5 [Pl.'s Opp'n Mem. of Law].) Rather, Plaintiff argues that she engaged in protected opposition when she opposed the proposed procedures that conflicted with federal regulations implementing Title VII,. (*Id.* at 8-12.) More specifically, Plaintiff argues that *Crawford* adopted an expansive interpretation of the opposition clause of Title VII's anti-retaliation provision and the mere fact that her job included ensuring Defendant complied with Title VII and its implementing regulations does not immunize Defendant from liability for discriminating against her because she opposed its failure to comply with those regulations. (*Id.*)

### 3. Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant asserts the following arguments. (Dkt. No. 21 [Def.'s Mem. of Law].) First, Defendant argues that, even if the so-called "manager rule" does not apply to this case, Plaintiff's Amended Complaint must be dismissed because she does not allege facts plausibly suggesting that she opposed any employment practice made unlawful by Title VII. (*Id.* at 1-2.) Specifically, Defendant argues that Plaintiff has failed to identify any employee, or group of employees, that was being discriminated against and that she subsequently reported. (*Id.*) Rather, as discussed above, Plaintiff opposed procedural changes, which she believed conflicted with federal regulations that potentially could cause future discrimination complaints not to be redressed. (*Id.*)

Second, Defendant re-iterates its argument regarding the "manager rule," and that an employee does not engage in protected activity under Title VII's opposition clause when engaging in conduct that is part of her job responsibilities. (*Id.* at 2-3.) According to Defendant, to hold otherwise would result in nearly all of the normal job activities conducted by certain categories of employees being deemed protected activity. (*Id.*)

## II. GOVERNING LEGAL STANDARD

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34(1)(b) at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 556-70, 127 S. Ct. at 1965-74.

The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean the pleading must contain at least "some factual allegation[s]." *Id*. at 555, 127 S. Ct. at 1965, n.3. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 554, 127 S. Ct. at1965.[1]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks

---

[1] It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (emphasis added). That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added). That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*., at 678, 129 S. Ct. at 1949.

## III. ANALYSIS

The parties' motion papers present the issue of whether Plaintiff has alleged facts plausibly suggesting that she engaged in protected activity under Title VII and the NYSHRL.[2] After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law and reply memorandum of law. (Dkt. No. 19, Attach. 1, at 7-10 [Def.'s Mem. of Law]; Dkt. No. 21, at 1-4 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"Section 704(a) of Title VII prohibits retaliation against two kinds of protected activity:

---

[2] The same standard applies to retaliation claims under both Title VII and NYSHRL. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (stating that "[t]he burden-shifting framework laid out in *McDonnell Douglas*, governs retaliation claims under both Title VII and the NYSHRL"); *Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012) (stating that "[c]laims brought under the NYSHRL 'are analyzed identically' and 'the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it it is under . . . Title VII'") (quoting *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 [2d Cir. 1999]).

'participation' in investigations into discrimination and 'opposition' to conduct prohibited by the statute." *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, 13-CV-4467, 2015 WL 5692860, at *18 (E.D.N.Y. Sept. 28, 2015). Under the opposition clause, "a plaintiff engages in a protected activity when he or she opposes an employment practice made unlawful under the provisions of Title VII." *Kauffman v. Maxim Healthcare Servs., Inc.*, 04-CV-2869, 2006 WL 1983196, at *5 (E.D.N.Y. July 13, 2006). "The practice complained of need not necessarily be illegal under Title VII; a cause of action is stated so long as plaintiff possessed a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Kunzler v. Canon, USA, Inc.*, 257 F. Supp. 2d 574, 579 (E.D.N.Y. 2003) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 [2d Cir. 1988]).

The Second Circuit recently clarified to what extent an employee's complaints of discrimination are protected activities under the opposition clause when that employee's job responsibilities involve preventing and investigating discrimination within the company by which he or she is employed. In *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015), the Second Circuit explained that,

> [t]o the extent an employee is required as part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity under § 704(a)'s opposition clause, because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII. But if an employee–even one whose job responsibilities involve investigating complaints of discrimination–actively "support[s]" other employees in asserting their Title VII rights or personally "complain[s]" or is "critical" about the "discriminatory employment practices" of her employer, that employee has engaged in a protected activity under §704(a)'s opposition clause.

*Littlejohn*, 795 F.3d at 318 (citing *Sumner v. U.S. Postal*, 899 F.2d 203, 209 [2d Cir. 1990]).

-11-

Although Plaintiff in the present case alleges facts plausibly suggesting that she "personally complained" of, and was "critical" about, the proposed changes to complaint-handling procedures within state agencies, the Court finds that this conduct did not rise to the level of opposing a protected activity under Title VII. Specifically, Plaintiff has not alleged facts plausibly suggesting that she *reasonably* believed the DOL and GOER were engaging in unlawful discrimination through the new complaint-handling procedures. Rather, Plaintiff alleges merely that she advised these entities, as part of her job duties, that the changes were in conflict with federal regulations regarding nondiscrimination. Conspicuously absent from Plaintiff's otherwise detailed Amended Complaint is any factual allegation plausibly suggesting that the handling of internal complaints pursuant to the new procedure actually caused any individual to be discriminated against under Title VII. Indeed, after being informed of the potential conflicts, her supervisors concededly took action to incorporate "bridging language" into the proposed procedures that addressed Plaintiff's concerns within approximately a month (apparently before any complaints were improperly handled such that an individual was discriminated against).[3]

---

[3] The cases cited by Plaintiff in support of her argument are distinguishable from the current case. In *Adams v. Northstar Location Servs., LLC*, 09-CV-1063, 2010 WL 3911415 (W.D.N.Y. Oct. 5, 2010), the court held that plaintiff adequately pleaded protected activity for purposes of her retaliation claim under the opposition clause when she advocated for certain minority employees by persuading management it would be inappropriate to fire them. *Adams*, 2010 WL 3911415, at *4. Similarly, in *Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000), an affirmative action official at a university was found to have engaged in protected activity by advocating on behalf of female and minority hires. *Johnson*, 215 F.3d at 576-77. Finally, in *Littlejohn*, Plaintiff complained about what she believed was unlawful discrimination when her supervisors showed preferential treatment to white employees during a merger, "while at the same time terminating, demoting, or unfavorably reassigning African-American and Latino/a . . . employees." *Littlejohn* 795 F.3d at 304.

It is worth noting that, in *Littlejohn*, the Second Circuit indicated that merely alerting one's supervisors to Title VII's mandates is not protected activity. More specifically, the Second Circuit held that plaintiff had opposed an unlawful practice under Title VII because she "was not simply conveying others' complaints of discrimination to [her supervisors] *or alerting them to Title VII's mandates*; she was complaining about what she believed was unlawful discrimination in the personnel decision-making process during the ACS/DJJ merger." *Littlejohn*, 795 F.3d at 319 (emphasis added). As discussed above, Plaintiff has alleged only that she was alerting her supervisors to federal regulation mandates in the course of performing her job so as to bring the proposed procedures into compliance. This, in and of itself, is insufficient to plausibly suggest that Plaintiff was opposing a protected activity under Title VII. *See Correa v. Mana Prods., Inc.*, 550 F. Supp. 2d 319, 330 (E.D.N.Y. 2008) (holding that "[i]n order for employees in human resources positions to claim retaliation they need to first clearly establish that they were engaged in protected activities other than the general work involved in their employment").

Finally, it is also worth noting that the Court is unpersuaded that Plaintiff was discriminated against based on her race. The Amended Complaint is devoid of any factual allegation plausibly suggesting an inference of discriminatory intent. (*See generally* Dkt. No. 14.) Plaintiff has not alleged that she was treated unfairly on the basis of her race as compared to other similarly situated employees or that her supervisors possessed a discriminatory animus. Although Plaintiff was informed that Ms. Hohenstein had referred to her as a "pain in her butt" for raising concerns about the new procedures, this remark does not carry an undertone of racial animus or discriminatory intent. *See Perry v. Sony Music*, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006) (holding that plaintiff failed to state a discrimination claim where, "[o]ther than

[plaintiff's] conclusory assertion [that he was discriminated against because he is black], [plaintiff] provides no further detail manifesting any form of racial animus, discriminatory words, prior incidents or other indications that his race played a role in [defendant's] decision to dismiss him").

For each of the foregoing reasons, the Court finds that Plaintiff has failed to state a claim under Title VII and the NYSHRL upon which relief can be granted.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 14) is **DISMISSED** in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

Dated: October 9, 2015
Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge